DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Deana Rivera, has appealed from the judgment of the Lorain County Court of Common Pleas, Probate Division, finding that her consent to the adoption of her minor children, I.P., born April 30, 1995, and C.P., born September 21, 1996, by Eddie and Terri Peterson was not necessary. We affirm.
 {¶ 2} A hearing on the question of the necessity of consent to the adoption was held before a magistrate. Evidence presented at that hearing is summarized as follows. Ms. Rivera is a resident of Texas and both children were also born in that state. Ms. Rivera testified that in May 1998, her oldest child, I.P., came to Ohio for a summer visit with Luisa Sylvestre, the mother of Juan Balderas, purported father of the children. Ms. Rivera stated that in September 1998, her second child, C.P., also came to stay with Ms. Sylvestre. Ms. Rivera had been charged with possession of marijuana and a controlled substance, and Ms. Silvestre apparently offered to watch the children until the case was resolved. The children have resided in Ohio since that time. Ms. Rivera has not visited the children since they came to Ohio.[1]
 {¶ 3} Ms. Rivera stated that her criminal case was resolved in November 1998 with a sentence of probation. Subsequently, she violated her probation. In mid-1999, Ms. Rivera was pregnant and also began serving her sentence on the probation violation. After serving one and one-half weeks in jail, she was hospitalized with a ruptured appendix after which her child was born prematurely. The baby remained in the hospital for four months and was hospitalized two or three more times. Subsequently, Ms. Rivera surrendered to the police on May 24, 2000 and completed her sentence. She was released on September 29, 2000. Since that time, she has been employed as a "marketing associate," selling long distance plans. She obtained her GED in 1996 and has completed one and one-half years towards a cosmetology license.
 {¶ 4} Ms. Sylvestre was apparently named as legal guardian of the children in 1998 in Lorain County. Eddie and Terri Peterson, who were friends of Ms. Sylvestre, had known the children since they came to Ohio. Since approximately February 2000, the Petersons served as caregivers for the children. Ms. Silvestre would leave them at the Petersons' home from 7:00 a.m. until 5:30 or 6:00 p.m., Monday through Friday. According to Ms. Peterson, in May 2000, Juan Balderas called and asked if she would watch the boys for an hour or two. Ms. Peterson stated that he brought the children over and never returned. The children have resided with the Petersons since that time.
 {¶ 5} Naomi Sansaricq, the maternal grandmother and also a resident of Texas, testified that since the children originally went to live in Ohio, she and Ms. Rivera would telephone Ms. Sylvestre regarding the children. She stated that she and Ms. Rivera were not made aware of exactly when the children were no longer staying with Ms. Silvestre. Excuses for their absence were made by Ms. Silvestre when she and Ms. Rivera would telephone.
 {¶ 6} Ms. Peterson testified that she sought and obtained guardianship of the children in August 2000 in order to register them for school. Apparently, Ms. Rivera did not receive notice of those guardianship proceedings. Further, despite contacting the court, it appears that Ms. Rivera did not receive proper notice of the guardianship review one year later. According to Ms. Sansaricq, failure of the court to notify Ms. Rivera of a late change in the scheduling of that proceeding resulted in an inability of Ms. Rivera and her parents to attend that proceeding.[2] In any event, Ms. Rivera stated she learned of Ms. Peterson's status as guardian of her children in September 2000.
 {¶ 7} Testimony was presented as to communications between Ms. Rivera and the children as well as items sent by Ms. Rivera to the children. Ms. Rivera sent several electronic greeting cards to the children. She did not see the boys from March 2001 to March 2002, but did speak to them on the telephone during that time period. Ms. Rivera left many messages on the Petersons' telephone answering machine, which were not returned by the Petersons. Ms. Peterson testified that the messages did not request a return phone call, but the children would hear the message play. Ms. Rivera and Ms. Sansaricq testified to the occasions on which they sent clothing, toys, a gift card, a 60-minute phone card, and a Leap Pad to the children. Ms. Rivera stated that she did not send any monetary support to the children.
 {¶ 8} Additional testimony was heard regarding difficulties encountered by Ms. Rivera in communicating with the children. Following a written request from Ms. Rivera's attorney, dated December 7, 2000, asking permission to speak with the children, the Petersons requested that calls only be made Tuesday evenings at 6:00 p.m.
 {¶ 9} Ms. Rivera testified that she discussed adoption with Ms. Peterson in December 2001. Ms. Peterson apparently stated that she wanted to adopt the children and Ms. Rivera indicated that she would not agree. At approximately that time, Ms. Peterson told her not to call the house any more, and Ms. Rivera began to send cards, letters, and e-mails instead. Ms. Rivera did call on I.P.'s April 2002 birthday and, at that time, was told she could resume making telephone calls.
 {¶ 10} Ms. Peterson changed her e-mail address in January 2002, explaining that it was due to a change in her internet provider. She did not convey the new address to Ms. Rivera because, she explained, she had not received any e-mails from her in quite some time.
 {¶ 11} On March 8, 2002, the Petersons filed petitions for the adoption of both children. The petitions alleged that the consent of the parents was not required because of the parents' failure to communicate with the children and failure to provide for the maintenance and support of the children without justifiable cause during the preceding year. On June 19, 2002, Ms. Rivera filed a notice of objection to the adoption of the children by the Petersons, and asserted that her consent is necessary because she had maintained contact and had provided for the maintenance and support of the children.
 {¶ 12} Based on the evidence presented at the hearing, the magistrate found that neither the father nor the mother provided maintenance and support for the children during the one year period, nor did they communicate with the children, and that such failure was without justifiable cause. Consequently, the magistrate held that consent by neither Ms. Rivera nor Mr. Balderas was required.
 {¶ 13} Ms. Rivera filed objections to the decision of the magistrate. Ultimately, the trial court also found that consent by neither Ms. Rivera nor Mr. Balderas was required by R.C. 3107.07(A). Ms. Rivera timely appealed and has presented four assignments of error for review. The first and second assignments of error will be considered together because they are related.
 First Assignment of Error
"The Trial Court Erred By Failing To Apply The Plain Meaning Of [R.C.3107.07(A)] And Instead By Making A Subjective Analysis Of The Term "Communicate" Which Is Contrary To Controlling Law. The Court's Ruling That Mother's Consent For Adoption Was Not Necessary Due To "minimal Communication" Is Against The Manifest Weight Of The Evidence, [R.C.3107.07(A)] As Well As The Ohio Supreme Court's Standard In [In ReHolcomb (1985), 18 OHIO St.3d 361]."
 Second Assignment of Error
"The Trial Court Erred By Not Finding That The Adoptive Parents Intentionally And Significantly Interfered With And Discouraged Communications Between Mother And Minor Children Creating Justifiable Cause For Failure To Communicate On A Regular Basis."
 {¶ 14} In her first and second assignments of error, Ms. Rivera asserts that the trial court erred in finding that her consent for adoption was not necessary on the basis of "minimal communication" with the children. She further contends that the trial court erred in failing to find that there was justifiable cause for failure to communicate on a regular basis. We disagree.
 {¶ 15} A trial court's finding excusing consent to an adoption pursuant to R.C. 3107.07(A) has been held to be a final appealable order.In re Adoption of Greer (1994), 70 Ohio St.3d 293, 298. The statutory provisions which govern adoption ordinarily require the written consent of a minor child's natural parent prior to adoption. See R.C. 3107.06. However, R.C. 3107.07(A) provides that consent will not be required if:
"the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."
 {¶ 16} The Ohio Supreme Court has parsed R.C. 3107.07(A) as follows:
"That statute states that a natural parent's consent is not required if both (1) the parent either (a) failed to communicate with the child for at least one year or (b) failed to provide for the maintenance and support of the child for at least one year, and (2) such failure was without justifiable cause." In re Adoption of Bovett (1987),33 Ohio St.3d 102, 105.
 {¶ 17} The statute is to be read in the disjunctive. In reAdoption of McDermitt (1980), 63 Ohio St.2d 301, 303-04. Therefore, a petitioner must only establish that a parent has failed either to communicate or to support the child, not both, before excusing the necessity of consent to the adoption by the natural parent.
 {¶ 18} In the case at bar, the magistrate's decision indicated that the consent of neither Ms. Rivera nor Mr. Balderas was required. The magistrate based his finding on a failure by each of them to communicate with the children as well as a failure by each of them to provide for the maintenance and support of the children. The magistrate also found that there was no justifiable cause for such failure.
 {¶ 19} Ms. Rivera filed written objections to the decision of the magistrate on two grounds. First, Ms. Rivera objected to the magistrate's subjective analysis of the term communicate, noting that Ms. Peterson admitted receiving packages, cards, telephone messages, a phone card, and e-mail messages, including computer-generated greeting cards from Ms. Rivera for the children. Second, Ms. Rivera claimed that petitioners interfered with and discouraged communication between Ms. Rivera and her children, thereby creating justifiable cause for a failure to communicate on a regular basis. Ms. Rivera did not object to the magistrate's finding regarding a failure to provide maintenance and support.
 {¶ 20} In its judgment entry, the trial court found that Ms. Rivera had "minimal communication" with the children in the year immediately preceding the filing of the petition, but that Mr. Balderas had none. The trial court also found that both Ms. Rivera and Mr. Balderas had failed to provide for the maintenance and support of the children. The trial court accordingly concluded that the consent of the father was not necessary because he failed without justifiable cause to communicate with the children or to provide for their maintenance and support. The trial court also concluded that the consent of Ms. Rivera was not necessary, but based its decision only on the fact that she failed without justifiable cause to provide for the maintenance and support of the children.
 {¶ 21} In her first assignment of error, Ms. Rivera asserts error by the trial court in construing her efforts at communication with the children to be insufficient to invoke the consent requirement of R.C.3107.07(A). In her second assignment of error, she contends that there was "justifiable cause" for any failure to communicate on a regular basis. Id.
 {¶ 22} Both arguments are without merit. As stated above, R.C.3107.07 provides that parental consent to the adoption of a child is not required where either of two possibilities exist. The court is not required to find both a failure to communicate and a failure to provide for maintenance and support during the year preceding the filing of the petition for adoption; rather, it must only find either a failure to communicate or a failure to provide for maintenance and support.
 {¶ 23} The trial court in this case, did not rely on any failure of Ms. Rivera to communicate with the child. Indeed, the court found, as a matter of fact, that Ms. Rivera did have "minimal communication" with her children. However, the trial court also found that Ms. Rivera, without justifiable cause, failed to provide maintenance and support for the children in the year immediately preceding the filing of the petition for adoption. The court concluded that Ms. Rivera's consent to adoption was not required for the reason that she failed, without justifiable cause, to provide for the maintenance and support of the children, not because of any failure to communicate with the children.
 {¶ 24} Although the magistrate found a lack of communication with her children by Ms. Rivera, the trial court did not rely upon that factor in reaching its conclusion that Ms. Rivera's consent to adoption was not required by R.C. 3107.07(A). "Any claim of trial court error must be based on the actions of the trial court, not on the magistrate's findings or proposed decision." Mealey v. Mealey (May 8, 1996), 9th Dist. No. 95CA0093.
 {¶ 25} Because the trial court did not find, nor did it rely on, a lack of communication with the children by Ms. Rivera in reaching its conclusion that consent to the adoption by Ms. Rivera was not necessary, the argument of Ms. Rivera claiming error in this regard is without merit. The first assignment of error is overruled.
 {¶ 26} In addition, since the trial court did not find a failure of communication by Ms. Rivera, it properly did not address the question of whether there was any justifiable cause for a failure to communicate. The second assignment of error is accordingly overruled.
 Third Assignment of Error
"The Trial Court Erred By Finding That Packages Of Clothing, Toys And A Money Card Sent To The Minor Children From Mother Did Not Constitute Support To The Minor Children."
 {¶ 27} In her third assignment of error, Ms. Rivera asserts error by the trial court in finding that providing clothing, toys and a money card did not constitute support to the children. There is no indication in the record that Ms. Rivera preserved this argument for appellate review.
 {¶ 28} Because it was a magistrate who initially made the decision in this case, Ms. Rivera was required to preserve her arguments for appellate review pursuant to the requirements set forth in Civ.R. 53(E)(3). Civ.R. 53(E)(3)(a) and 53(E)(3)(b) provide that a party may file written objections that "shall be specific and state with particularity the grounds of objection." Former Civ.R.53(E)(3)(b) also "prohibits a party from `assign[ing] as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule.'"[3] State exrel. Booher v. Honda of Am. Mfg. (2000), 88 Ohio St.3d 52, 53-54, quoting Civ.R. 53(E)(3)(b).
 {¶ 29} Ms. Rivera objected to the magistrate's decision in regard to the finding that there was a failure to communicate with her children. She also objected to the failure of the magistrate to credit such lack of communication to "justifiable cause." However, she lodged no objection to the finding by the magistrate that she had not provided for the maintenance and support of the children. Because Ms. Rivera has not properly preserved this argument, she is precluded from raising it on appeal. The third assignment of error is overruled.
 Fourth Assignment of Error
"The Trial Court Erred By Failing To Strike [The Petersons'] Response To Objection (sic) As Untimely Filed."
 {¶ 30} In her fourth assignment of error, Ms. Rivera asserts error in the trial court's failure to strike the Petersons' response to her objections to the magistrate's report as untimely filed. We disagree.
 {¶ 31} Ms. Rivera argues that the trial court erred in not striking the Petersons' response to her objections to the magistrate's decision because it was filed more than sixty days after the objections were filed. She contends that if the Petersons' filing was considered to be an objection, the time requirement is ten days; if it is an answer, the time requirement is seven days; and if it is a responsive pleading, then leave of court is required.
 {¶ 32} Even if this Court were to assume that the trial court failed to follow applicable time constraints, and that such failure constituted error, Ms. Rivera has the burden of not only demonstrating error, but also of demonstrating prejudice resulting from such error.Lowry v. Lowry (1988), 48 Ohio App.3d 184, 190, citing Gries SportsEnterprises, Inc. v. Cleveland Browns Football Co. (1986),26 Ohio St.3d 15, 28.
 {¶ 33} Ms. Rivera has argued only that the "Civil Rules and considerations of equity require a timely response to motions, especially in adoption cases where the well-being of children is at stake." Ms. Rivera's own motion to strike was filed more than thirty days after the Petersons' response. The trial court's judgment entry, ruling on the necessity of consent, was filed on the same day as the motion to strike. Ms. Rivera has failed to explain on appeal how she has been prejudiced by the failure of the trial court to strike the Petersons' response. Consequently, her fourth assignment of error is overruled.
 {¶ 34} Ms. Rivera's four assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Probate Division, is affirmed.
Judgment affirmed.
WILLIAM G. BATCHELDER, SLABY, P.J. WHITMORE, J. CONCUR
[1] It appears that the only maternal relative to visit the children in Ohio since 1998 was Ms. Rivera's father who visited the children in the summer of 2000.
[2] Both parties seem to be in agreement regarding the lack of notice to Ms. Rivera. However, the record presently before this Court does not contain the full record of the guardianship proceedings. Further, procedural issues relevant to that matter are not now before this Court.
[3] Civ.R. 53 has since been amended and this language now appears in Civ.R. 53(E)(3)(d).